ANDREW P. QUIGLEY, JR., & others[1] *vs.* BAY STATE GRAPHICS, INC., & others.[2]

Essex. April 6, 1998. - May 15, 1998.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Insurance agent, Insurance company, In obtaining insurance policy. *Contract,* To obtain insurance. *Insurance,* Comprehensive liability insurance, Agent's negligence.

In a claim brought against an insurer and its agent for negligence, for the failure to name the plaintiffs as loss payees on a policy insuring certain commercial property in which the plaintiffs had financial interests, summary judgment was correctly ordered in favor of the defendants, where the plaintiffs failed to establish that the agent promised or agreed to procure coverage for the plaintiffs, that the plaintiffs had rightfully and foreseeably relied on the agent to obtain coverage, that the agent knew the plaintiffs had relied on their tenant, the insured, to protect their interests, or that the agent in any way misinformed or misled the plaintiffs with respect to coverage. [459-462]

In a claim brought against an insurer and its agent for breach of contract for the failure to name the plaintiffs as loss payees on a policy insuring certain commercial property in which the plaintiffs had financial interests, summary judgment was correctly ordered in favor of the defendants, where the plaintiffs failed to establish that the contracting parties intended the plaintiffs, third parties, to be beneficiaries of the policy. [462-463]

CIVIL ACTION commenced in the Superior Court Department on March 2, 1993.

The case was heard by *Howard J. Whitehead,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Richard E. Welch, III,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Phillip B. Kraft* for the plaintiffs.

*Michael R. Byrne* (*Carolyn G. Sullivan* with him) for Cochrane & Porter Insurance Agency, Inc.

---

[1]Stephen Quigley and Journal Transcript Newspapers, Inc.

[2]Royal Insurance Companies and Cochrane & Porter Insurance Agency, Inc.

*Jacques N. Parenteau (Alexander J. Cochis* with him) for Royal Insurance Companies.

MARSHALL, J. This action stems from a December, 1992, fire that destroyed a commercial building in Chelsea owned by the plaintiffs Andrew P. Quigley, Jr., and Stephen Quigley, trustees of a testamentary trust (trustees), and damaged printing equipment in the building in which Journal Transcript Newspapers, Inc. (Journal Transcript), held a security interest. Michael Ploude, the president of the defendant Bay State Graphics, Inc. (Bay State), the commercial tenant in the building, was later convicted of arson and insurance fraud. The trustees commenced this action for declaratory relief on March 2, 1993, and, on January 10, 1994, were granted leave to amend their complaint to add Journal Transcript as a plaintiff. The amended complaint asserted claims of negligence, breach of contract, and violations of G. L. c. 176D and G. L. c. 93A against Royal Insurance Companies (Royal Insurance) and its agent Cochrane & Porter Insurance Agency, Inc. (Cochrane & Porter), in connection with a comprehensive general liability policy that had been issued to Bay State.

In early 1996, Cochrane & Porter and Royal Insurance each filed a motion for summary judgment on the negligence and contract claims. The motions were allowed by a judge in the Superior Court on July 16, 1996. The plaintiffs took an appeal from his order. We transferred the appeal here on our own motion. We affirm the grant of summary judgment.

1. *Facts.* We summarize the facts viewed in the light most favorable to the plaintiffs, the parties that opposed the motions for summary judgment. *Tetrault* v. *Mahoney, Hawkes & Goldings,* 425 Mass. 456, 459 (1997). The trustees own the building located at 18 Fourth Street in Chelsea. In 1988, Journal Transcript bought four newspapers from the trustees, and the trustees in turn leased the building to Journal Transcript. Pursuant to the lease, Journal Transcript was responsible for purchasing and maintaining insurance coverage on the building for the benefit of the trustees. As to any such insurance, the record discloses only that for the period October 23, 1990, to October 23, 1991, Journal Publishing Corp., predecessor to Journal Transcript, was listed as the named insured on a commercial property insurance policy issued by Brian K. McCarthy Insurance Agency insuring the building. The record does not disclose the nature of the insurance, if any, obtained by Journal Transcript for the benefit of the trustees.

In or about 1990, Journal Transcript sold its business and its printing equipment to Journal Graphics, later known as Bay State. At the same time, Journal Transcript subleased the building to Bay State and, as collateral for a note, retained a security interest in the printing equipment in the building. The sublease agreement required Bay State to purchase and maintain insurance on the building for the benefit of the trustees, and on the secured equipment for the benefit of Journal Transcript. Bay State's president, Michael Ploude, was responsible for obtaining the insurance. The record does not disclose what, if any, actions Ploude took to obtain insurance prior to October, 1991, although it appears that the insurance policy previously issued to Journal Transcript for the period through October 23, 1991, remained in effect.

In October, 1991, Bay State procured a new insurance policy that included comprehensive general liability and property insurance for the building and its contents. The policy, issued by Globe Indemnity Company, a subsidiary of Royal Insurance, was obtained through Cochrane & Porter acting as agents for Royal Insurance, and covered the period October 23, 1991, through October 23, 1992. When the policy issued, Joan Kenney Boylan, the client services manager of Cochrane & Porter, contacted Ploude, because a checklist form used by Cochrane & Porter for new accounts indicated that a certificate of insurance should be sent to Stephen Quigley. Boylan sought to ascertain from Ploude whether Bay State wanted Stephen Quigley named on the policy.[3] Ploude responded that "he had not been requested to do so and he did not wish to adjust the policy." Boylan then sent a letter to Ploude confirming that a certificate of insurance had been sent "to your landlord," and suggesting to Ploude that he send a copy of the sublease to her.[4] It is undisputed that Ploude never sent a copy of the sublease to Cochrane & Porter.

On November 11, 1991, Cochrane & Porter issued the certificate of insurance to Stephen Quigley. The certificate

---

[3]Boylan testified that she called Ploude because "[i]t was unclear to me at the time how the policy should read. . . . I was instructed by Mr. Ploude at that time not to add Mr. Quigley as an additional interest."

[4]Boylan's letter to Bay State stated in part: "Per your instructions, we have not added the building owner as an additional insured under this policy. As I mentioned to you, we really should have a copy of your lease on file so that we may properly review it for any further possible insurance requirements. Please consider sending it at your earliest convenience."

identified Bay State as the only named insured, and listed Stephen Quigley as the "Certificate Holder." The certificate also stated that the "Certificate Holder" was the "building owner," and that the lease "requires" the insured (Bay State) "to cover the building at $175,000." The certificate made clear that the insurance expired in October, 1992, and stated in relevant part: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend, or alter the coverage afforded by the policies listed below." It further stated: "Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." There was no other communication between Cochrane & Porter or Royal Insurance and either Andrew or Stephen Quigley. It is undisputed that at the time Cochrane & Porter had no knowledge that Journal Transcript had any interest in the insured property.

At the end of the initial policy period, Bay State renewed its policy for the period October 23, 1992, to October 23, 1993. No certificate of insurance with respect to the renewed policy was issued. On December 11, 1992, the building and its contents were damaged by fire. In the wake of the fire, Stephen Quigley and an employee of Journal Transcript contacted Cochrane & Porter to inquire about insurance coverage for the loss. They then learned they were not listed as insureds on the Bay State policy. Cochrane & Porter contacted Ploude, who asked that Bay State's insurance policy be amended retroactively to add the trustees and Journal Transcript to the policy. Cochrane & Porter requested such amendments, but Royal Insurance refused to amend the policy retroactively.

Because it illuminates the claims in this case, we discuss briefly the subsequent history between Bay State and Royal Insurance. In the wake of the fire, on December 14, 1992, Bay State presented its claim for damages to Royal Insurance. Royal Insurance denied the claim and commenced an action against Bay State and Ploude individually in Federal court, alleging insurance fraud and deceit. While that case was pending, Ploude was convicted in a State court of arson and insurance fraud. Subsequent to Ploude's conviction, Royal Insurance's motion for summary judgment against Ploude and Bay State was

granted. Royal was also awarded a judgment to satisfy payment of its investigative costs and attorney's fees.

2. *Negligence claims.* The burden on the defendants is to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "Once the defendants [meet] their burden in moving for summary judgment, the burden shift[s] to the plaintiff[s] to show with admissible evidence the existence of a dispute as to material facts." *Godbout* v. *Cousens*, 396 Mass. 254, 261 (1985). The plaintiffs assert two tort theories: that Cochrane & Porter and Royal Insurance were negligent in failing to include them as loss payees on Bay State's insurance policies, and that the defendants negligently misrepresented to them that they were included as loss payees in the insurance policies. The defendants respond that Cochrane & Porter acted as the agent for Bay State, and had no duty to protect third parties such as the trustees and Journal Transcript, absent a request by Bay State to do so.[5] It is undisputed, they claim, that Cochrane & Porter was asked to procure a policy of insurance covering Bay State's interests, which it did, and that it was not asked to procure a policy covering the trustees or Journal Transcript.

In *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 192-193 (1982), we held that in certain limited circumstances an agent's failure to procure insurance coverage may give rise to liability to a third party. In that case, the agent promised an employer that he would procure a workers' compensation insurance policy for the employer, and failed to do so. We concluded that the insurance agent could be held liable on a tort theory to the statutory dependent of the employee (his widow) because, in light of the statute requiring workers' compensation insurance, it was foreseeable that the agent's failure to procure a workers' compensation policy would harm the employee or his widow. *Id.* In *Flattery* v. *Gregory*, 397 Mass. 143 (1986), we elaborated that a necessary prerequisite to a recovery under either tort or third-party contract liability is the existence of a promise by the

---

[5]The trustees do not assert that Royal Insurance's obligations toward them derive from any source other than its agency relationship with Cochrane & Porter. They argue that Royal Insurance is liable to them if, and only if, Cochrane & Porter is found liable. Because we affirm the grant of summary judgment to Cochrane & Porter, we do not address separately any theory of liability as to Royal Insurance.

agent to procure the insurance requested by the client. *Id.* at 145.[6] As to Journal Transcript, it has failed to establish any facts that could prove Cochrane & Porter agreed to procure insurance coverage for its interest in the printing equipment, and failed to do so. Cochrane & Porter was not aware even of Journal Transcript's security interest in the printing equipment. Journal Transcript fails to meet the necessary prerequisite to maintain a tort claim against the defendants.

As to the claim by the trustees, Cochrane & Porter was instructed to and did procure a policy covering Bay State. It was instructed by Bay State *not* to add Stephen Quigley to the policy, and it owed Bay State a "duty to proceed in accordance with [Bay State's] instructions." *Rayden Eng'g Corp.* v. *Church*, 337 Mass. 652, 660 (1958). See Restatement (Second) of Agency § 385 (1958). The trustees point to the undisputed fact that Cochrane & Porter knew of Stephen Quigley's insurable interest in the building, and claim that Cochrane & Porter had "reason to know" that the trustees would rely on the insurance agent to protect their interest. Even viewing these facts in the light most favorable to the trustees, we are dubious that there is a genuine issue as to whether Cochrane & Porter agreed to procure coverage that would protect the interests of the trustees. Cf. *Baldwin* v. *Mortimer*, 403 Mass. 142, 145 (1988) (summary judgment affirmed where plaintiff provided no evidence to show that agent promised to procure coverage in question).[7]

Even were we to conclude that there is a genuine issue as to whether Cochrane & Porter agreed with Bay State to procure a policy that would insure the trustees' interests and failed to do so, there is an independent reason why the trustees' tort claim must fail. In *Flattery, supra* at 146, we said that the third party

---

[6]In *Flattery* v. *Gregory*, 397 Mass. 143 (1986), the operator of a motor vehicle was injured by the negligence of another driver. The operator sued an insurance agent who, he alleged, had undertaken to obtain optional liability coverage for the driver, and then failed to do so. In reviewing the allowance of a motion to dismiss, we concluded that the complaint adequately stated a claim that the agent had promised that he would procure the disputed coverage because prior dealings between the agent and the driver warranted "a finding of a promise implied from custom." *Id.* at 146.

[7]The certificate of insurance named Stephen Quigley as the owner of the building. In fact, the building was owned by a testamentary trust created under his father's will. Had Cochrane & Porter procured coverage naming Stephen Quigley as an additional insured, the trustees have not established that they necessarily would have been entitled to recover on the policy.

would also have to prove that the alleged facts established a "legally recognized duty" that was owed by the agent to the third party. In that case, we held that the motor vehicle operator did not meet this requirement because he could not "rightfully and foreseeably" expect insurance beyond what was required by statute to be in effect. *Id.* at 147. In the absence of foreseeable reliance on the promised services being performed by someone, we have never held that "a promisor of services may be liable in tort not only to the promisee but also to potential beneficiaries of the promise." *Id.* Applying the *Flattery* test to the undisputed facts of this case, we conclude that the trustees have not established that they "rightfully and foreseeably" relied on any promise by Cochrane & Porter to Bay State to obtain coverage naming them as loss payees of the insurance agreement procured by Bay State. There is no statutory or other legal obligation imposed on the tenant of the building to carry the coverage in question. Cf. *Rae, supra* (workers' compensation coverage mandatory); *Flattery, supra* at 147 (no liability for optional motor vehicle liability insurance in excess of statutory minimum); *Couillard* v. *Pick*, 397 Mass. 756, 758-760 (1986) (general liability coverage not required by statute). Although they rely on *Rae* and *Flattery*, the trustees can claim no foreseeable reliance on that basis.

The trustees also argue that, as provided in its sublease with Journal Transcript, Bay State had a contractual obligation to procure insurance coverage protecting them, and that they foreseeably relied on that contractual obligation to protect their interest. We have said that a contractual obligation may support a claim for foreseeable reliance. *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, 501 (1967). In *Craig*, however, we emphasized "that the plaintiff had relied on the defendant's performance of its obligations under its contract with the developer, *and that the extent of that reliance was known to the defendant*" (emphasis added). *Flattery, supra* at 147. Here, there is nothing to suggest that Cochrane & Porter knew that the trustees would rely on Bay State to protect their interest. While Cochrane & Porter had been informed that Stephen Quigley was the owner of the property, there is no fact to which the trustees can point to establish that Cochrane & Porter knew that Bay State was required to obtain insurance coverage for the plaintiffs' interest. It is undisputed that Cochrane & Porter never saw the lease agreement between Bay State and Journal

Transcript, and was never informed that Bay State had contracted to insure the trustees' interests. There is no showing that Cochrane & Porter had actual knowledge of Bay State's contractual obligation to its landlord, and no showing that it knew that the trustees would rely on the sublease.

As an alternative basis for tort recovery, the trustees claim that Cochrane & Porter misinformed or misled them when it issued the certificate of insurance to Stephen Quigley. See Restatement (Second) of Torts § 552 comment e (1977).[8] This theory is unavailing to the trustees. First, they have not demonstrated any misrepresentation by Cochrane & Porter: the certificate of insurance issued to Stephen Quigley in 1991 is accurate. Second, the certificate by its terms applied only to the policy year in question, ending on October 23, 1992, six weeks before the fire. Further, in *Nycal Corp.* v. *KPMG Peat Marwick LLP*, 426 Mass. 491, 499 (1998), a case involving alleged negligent representation by accountants to third parties, we said that to establish such liability, noncontractual third parties must demonstrate actual knowledge by the accountant that potential third parties would rely on its financial report. The trustees have not demonstrated that Cochrane & Porter had actual knowledge that they would rely on the certificate as confirming that Bay State had procured insurance to cover their interests, as opposed to Bay State's interest in the property. The plain terms of the certificate stated otherwise.

3. *Contract claim.* Plaintiffs assert that there are material facts in dispute as to whether they were intended beneficiaries of the insurance contract between Cochrane & Porter and Bay State. "A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304 (1981). In *Flattery, supra* at 150-151, we said that to recover against an insurance agent on a contract claim, a potential beneficiary must demonstrate that the agent had promised the person seeking insurance that the insurance would be obtained; and that the contracting parties intended

---

[8]The trustees' theory of negligent representation appears to be elaborated for the first time on appeal. The trustees did allege in their amended complaint that the certificate of insurance led them to "believe that their interests in the Property were adequately insured," but the record does not disclose whether they opposed the motion for summary judgment on this basis. We exercise our discretion to consider this alternative basis for tort recovery.

the third party to be a beneficiary of the insurance contract. It is not disputed that Cochrane & Porter procured insurance for Bay State that insured the building and its contents. But the plaintiffs have not met the second prong of the test. Viewing the facts most favorably to them, they do not establish that either Ploude, as president of Bay State, or Cochrane & Porter intended the policy to insure their interests.

As to Bay State, the undisputed evidence is that Ploude sought to obtain insurance for Bay State alone. He expressed that intention to Cochrane & Porter's client services manager. The plaintiffs argue that Ploude's intention to include them as loss payees is evidenced by his request after the fire that the trustees and Journal Transcript be added as insured parties to Bay State's policy. No such inference can be drawn. Ploude specifically rejected the inquiry by Cochrane & Porter that Stephen Quigley be added as a named insured. Ploude also failed to forward a copy of Bay State's lease to Cochrane & Porter, despite its request that he do so. His actions after the fire, particularly when viewed in light of his later conviction of arson, is not probative of his intent prior to the fire.

There is also no evidence that either Cochrane & Porter or Royal Insurance intended the plaintiffs to be beneficiaries of the policy. The trustees argue that because Bay State "owned neither the building nor the printing equipment," only the plaintiffs would be "entitled to the proceeds in the event of a loss." The claim is without merit. See *Queen* v. *Vermont Mut. Ins. Co.*, 32 Mass. App. Ct. 343, 345 (1992) ("Title is not the touchstone of an insurable interest. Persons have an insurable interest if they receive a benefit from that property or will suffer a loss by reason of its destruction"). See also 4 J.A. Appleman & J. Appleman, Insurance Law and Practice § 2193, at 120-121 (1969 & Supp. 1997) ("A tenant has an insurable interest in a leasehold, at least under certain circumstances. Usually he is under no obligation to procure insurance for the benefit of the lessor, in the absence of special provisions of the lease or by some collateral agreement"). Bay State had its own insurable interest in the property, and would have had a claim for the proceeds in the event of a loss but for the insurance fraud.

*Judgment affirmed.*