FRANK E. WILSON *vs.* JAMES L. COONEY INSURANCE AGENCY.

No. 05-P-382.

Middlesex. December 16, 2005. - April 20, 2006.

Present: ARMSTRONG, C.J., LAURENCE, & KANTROWITZ, JJ.

*Insurance,* Agent's negligence, Broker. *Contract,* Insurance. *Broker,* Insurance. *Negligence,* Insurance agent, In obtaining insurance policy, Proximate cause.

In an action brought by a physician against an insurance agency for negligence and violation of G. L. c. 93A, on the theory that the agency, which had obtained professional liability coverage for the plaintiff, owed the plaintiff a duty to inform him when the medical group for whom the plaintiff worked as an independent contractor (and for whom the agency had also obtained liability coverage) no longer carried vicarious liability coverage protecting itself from exposure created by malpractice on the part of its independent contractors, such as the plaintiff, this court ordered judgment to enter in favor of the agency, where the physician could not establish a cognizable injury on the facts, and where Massachusetts law did not impose a duty on the agency in such circumstances. [160-166]

CIVIL ACTION commenced in the Superior Court Department on April 6, 2000.

The case was tried before *Peter M. Lauriat,* J.

*Richard F. Wholley* for the defendant.

*Michael DeMarco (Aimée E. Bierman* with him) for the plaintiff.

LAURENCE, J. Frank E. Wilson brought suit, on his own behalf and as assignee of Southboro Medical Group (SMG), against the James L. Cooney Insurance Agency (Cooney) for negligence and violation of G. L. c. 93A. Wilson's theory of liability was that Cooney (which had obtained professional liability coverage for Wilson) owed Wilson a duty to inform him when SMG (the medical group Wilson was associated with as an independent contractor and for which Cooney had also obtained liability

coverage) no longer carried vicarious liability coverage protecting itself from exposure created by malpractice on the part of its independent contractors, including Wilson.

When SMG found itself vicariously liable for Wilson's negligence following a successful malpractice suit against him, SMG pursued its indemnification rights against Wilson under the parties' independent contractor agreement. Wilson alleged in the instant action that he was harmed by Cooney's conduct because the lack of vicarious liability coverage led to SMG's exposure to the claimant, which created Wilson's exposure to SMG. A jury returned a verdict in favor of Wilson on his negligence claim against Cooney, and the trial judge denied Cooney's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Because Wilson could not establish a cognizable injury on these facts, and because Massachusetts law does not impose a duty on Cooney in these circumstances, we vacate the verdict and reverse the judgment.[1]

*Factual background.* Since 1986, Wilson, a physician board-certified in obstetrics and gynecology, worked as an independent contractor for SMG.[2] Their relationship was governed by a written independent contractor agreement (SMG-Wilson independent contractor agreement), which contains provisions requiring both Wilson and SMG to indemnify each other for each other's acts of negligence and also requiring both of them to maintain professional liability insurance in the amount of $1,000,000 per individual claim and $3,000,000 in the aggregate.[3] There was no requirement in the SMG-Wilson independent contractor agreement that either party carry vicarious liability coverage for potential liability exposure caused by the other's negligence.

At all relevant times, Cooney had obtained insurance cover-

---

[1]Since we decide as matter of law that Wilson may not maintain a negligence action against Cooney in these circumstances, we need not address Cooney's other claimed errors, namely, that Wilson's claims were time barred under G. L. c. 260, § 2A; that the judge made numerous errors relative to the jury instructions; and that the jury's verdict was against the weight of the evidence.

[2]Wilson first began working for SMG in 1977 as an employee.

[3]There is no dispute that at all times both Wilson and SMG carried the insurance coverage required under the SMG-Wilson independent contractor agreement.

age for both SMG and Wilson.[4,5] Although Cooney knew Wilson was an independent contractor for SMG, having received information from SMG about its independent contractors as requested in renewal forms and information requests, Cooney was never provided a copy of the SMG-Wilson independent contractor agreement by Wilson or SMG. SMG was one of Cooney's largest accounts, with Cooney handling nearly all of SMG's insurance needs, and Cooney was in regular contact with SMG. Cooney was not in regular contact with Wilson, however. Wilson never initiated contact with Cooney or any of its employees or agents, never communicated verbally with them, never asked them for advice, never sought to raise his coverage limits, and never communicated with Cooney about SMG's coverage.[6] The only contact between Wilson and Cooney involved the renewal of Wilson's malpractice policy.

For many years, SMG's insurance policy automatically provided vicarious liability coverage for SMG should SMG face exposure for the negligent acts of independent contractors like Wilson. At some point in late 1990 or early 1991, vicarious liability coverage was no longer provided unless SMG paid ad-

---

[4]Cooney took over the renewal of SMG's medical malpractice insurance policy with the Medical Malpractice Joint Underwriting Association of Massachusetts (JUA) (later changed to ProMutual) when it purchased the Normandin Insurance Agency in 1987 or 1988. Cooney serviced SMG's malpractice insurance renewals through February, 1994.

[5]The parties expend considerable energy arguing whether Cooney was merely an insurance "agent" or was rather a "broker" or "advisor" with a "heightened duty" to Wilson, but those arguments are largely beside the point, under our analysis as set forth *infra*. At trial, Wilson called an expert, Michael Rodman, who testified that Cooney was acting as SMG's and Wilson's broker, as opposed to merely an agent, and that as a broker, Cooney owed various duties to SMG and Wilson, including the duty to assess their risk and need for coverage, advise them of the coverage they were being provided, and identify potential exposures faced by the policyholders. Although at one point Rodman testified that Cooney breached its professional duties to SMG and Wilson in connection with the furnishing of medical malpractice insurance for the years 1990 to 1994, when he was later questioned on the matter, Rodman testified that Cooney breached its responsibilities to SMG but that he could not "say for sure regarding Dr. Wilson."

[6]Wilson did not participate in SMG's negotiations involving its malpractice insurance, and SMG did not keep Wilson informed as to those negotiations, nor did Wilson ever request that SMG keep him apprised of changes in its coverage.

ditional significant premiums. Cooney did not inform SMG of the change in insurance coverage until March, 1993. On March 16, 1993, SMG sent a letter to Cooney requesting the vicarious liability coverage. On July 1, 1993, Cooney informed SMG that the additional insurance would cost approximately $82,000. SMG elected not to purchase the vicarious liability coverage at that time because of its "excessive" cost, and did not obtain such insurance until early 1996. At no relevant time did SMG inform Wilson or any of its independent contractors of its decisions in regard to vicarious liability coverage.

In late June, 1993, a medical malpractice action was commenced against Wilson (the Jones action). In that action, Wilson was sued for negligence associated with the delivery of a neurologically impaired child, and SMG was joined as a defendant under a theory of vicarious liability. SMG did not have vicarious liability coverage in place at the time the Jones action was brought.[7] After a trifurcated proceeding, Wilson was found negligent and SMG was found vicariously liable. Prior to a trial on damages, Wilson and SMG settled the Jones action for $1,440,918.19. Wilson's insurer, ProMutual, contributed $1,000,000 (the coverage under Wilson's medical malpractice policy). SMG paid the $440,918.19 balance because it had no vicarious liability coverage.

SMG then sought indemnity from Wilson under the SMG-Wilson independent contractor agreement. Ultimately, the parties agreed to an arrangement whereby Wilson agreed to pay one-half of the $440,918.19 paid by SMG and one-half of legal fees incurred by SMG ($18,600.72) regarding the uninsured loss, in exchange for SMG's assigning to Wilson its rights to sue Cooney for the absence of vicarious liability insurance.[8]

Wilson thereafter sued Cooney on his own behalf and as assignee of SMG. With respect to his own claim against Cooney, Wilson asserted that Cooney was negligent in failing to inform

---

[7]Although Wilson testified that he expected SMG to have vicarious liability coverage in place, Wilson never had discussions with SMG about its vicarious liability coverage until after the Jones action was filed. Prior to the Jones action, no one at SMG had ever informed Wilson whether SMG did or did not have vicarious liability coverage in place.

[8]In total, Wilson paid SMG $229,759.46.

Wilson that SMG no longer carried vicarious liability coverage, and that Cooney's negligence resulted in harm to Wilson when SMG sought indemnity against Wilson under the SMG-Wilson independent contractor agreement. After trial, with respect to the assigned claim of SMG, the jury found that Cooney was negligent but awarded SMG no damages, apparently because of SMG's comparative negligence.[9] With respect to Wilson's own claim, the jury found that Cooney was also negligent and awarded Wilson $275,000.[10] Cooney moved for judgment notwithstanding the verdict (or, in the alternative, for a new trial), arguing that Wilson could not as matter of law recover because Cooney did not have a heightened duty to advise Wilson of changes in SMG's coverage, nor could he recover in tort as a potential beneficiary of SMG's contractual relationship with Cooney.[11] The trial judge denied Cooney's motion and this appeal followed.

*Discussion.* The most obvious defect in the challenged verdict and ruling arises from the fact that Wilson could not as matter of law have established a prerequisite of negligence liability, which was his burden to prove, namely, proximately caused injury. See *Wainwright* v. *Jackson*, 291 Mass. 100, 102 (1935); *Kent* v. *Commonwealth*, 437 Mass. 312, 320 (2002). Even if in June, 1993, SMG had had in place a policy affording vicarious liability coverage for its independent contractors' malpractice, that would not (contrary to the trial judge's erroneous belief) have reduced, much less eliminated, Wilson's exposure. Had the excess liability of $440,918.19 been paid by that hypothetical insurer, Wilson would have nonetheless remained at risk, for the insurer would have had the right to recover the additional amount it had paid from Wilson under the subrogation provision in its contract with SMG. The presence of vicarious liability coverage would not have changed the fact or amount of

---

[9]There is no appeal from this portion of the jury verdict.

[10]The judge reserved the claims under G. L. c. 93A for himself and denied those claims in their entirety.

[11]Cooney also argued that Wilson's claim against Cooney was barred by the applicable statute of limitations, that the judge committed various errors in the jury instructions, and that the verdict was against the weight of the evidence. Cooney had previously preserved its objections by moving for a directed verdict.

Wilson's exposure, just the identity of the person to whom he would ultimately be exposed. Thus, even were Cooney deemed to have had some sort of duty to advise Wilson about SMG's coverage (or lack thereof), its failure to have done so could not have been a factor (much less a substantial factor) leading to Wilson's loss. See *Flattery* v. *Gregory*, 397 Mass. 143, 147 (1986); *Hebert* v. *Enos*, 60 Mass. App. Ct. 817, 820-821 (2004).[12]

Wilson's direct negligence claim against Cooney was also not actionable under Massachusetts law because Cooney had no legal duty to inform Wilson when SMG no longer carried vicarious liability coverage protecting itself from the negligent acts of its independent contractors. Wilson argues that the following facts support the imposition of such a duty in these circumstances: (1) Cooney was the broker for both Wilson and SMG, and had a long-standing business relationship of procuring professional liability insurance for them; (2) as their broker, Cooney had various duties to SMG and Wilson, including the duty to notify them of policy changes and assist them in assessing their risks; (3) SMG and Wilson relied on Cooney to keep them apprised of policy changes; (4) unbeknownst to SMG or Wilson, SMG's vicarious liability coverage changed drastically, and Cooney did not timely inform SMG or Wilson of the change; and (5) Cooney knew that Wilson was an independent contractor of SMG.

As Wilson's broker, Cooney is Wilson's agent and undeniably had certain duties to him, including "us[ing] due care in the implementation of the agency . . . and in carrying out instructions of the principal-client."[13] *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 500 (1980). See *Rae* v. *Air-Speed, Inc.*, 386

---

[12]Cooney essentially addresses the point discussed in the preceding paragraph, although less than pellucidly, in its brief and reply brief, through its reiterated argument that any vicarious liability coverage SMG might obtain would protect it, not Wilson or other independent contractors. A further supporting observation is that after Cooney informed SMG in March, 1993, that its policy no longer included vicarious liability coverage, SMG made the business decision not to purchase it because of its "excessive" cost, did not purchase it until 1996, and presumably would not have done so prior to the Jones action because of its cost.

[13]"There is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs

Mass. 187, 192 (1982) ("Massachusetts law, in accordance with the general rule, clearly permits a potential insured . . . to recover in tort for the failure of an insurance agent to perform his duty to obtain an insurance policy"); *Campione* v. *Wilson*, 422 Mass. 185, 195 (1996). As we stated in *Bicknell, Inc.*, 9 Mass. App. Ct. at 500-501:

> "The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess. 'If he holds himself out to the world as possessing certain skill, or if his business is such as to carry with it an implication that he possesses particular skill in effecting insurances, as in [the] case of an insurance broker, then his principal is justified in relying upon the knowledge which he professes to possess, and he is bound to exercise the skill and to use the knowledge which the business requires.' 3 Couch, Insurance § 25:37[,] at 335-336 (2d ed. 1960)."

"Although an insured is entitled to rely on his broker as his agent, an insured cannot abandon all responsibility for ascertaining the terms of the coverage his broker obtained." *Campione*, 422 Mass. at 196.

Notwithstanding Cooney's general duties owed Wilson, Cooney did not have a special duty to inform Wilson that

---

of the insured[,] . . . [and] [t]he agent does not, in general, have a fiduciary duty to the insured in this regard." *Martinonis* v. *Utica Natl. Ins. Group*, 65 Mass. App. Ct. 418, 420-421 (2006). We are aware that in some circumstances a broker's obligations to an insured may resemble those of a fiduciary, if "special circumstances of assertion, representation and reliance" are present. *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 501 (1980), quoting from *Rapp* v. *Lester L. Burdick, Inc.*, 336 Mass. 438, 442 (1957). *Baldwin Crane & Equip. Corp.* v. *Riley & Reilly Ins. Agency, Inc.*, 44 Mass. App. Ct. 29, 32 (1997). *Martinonis, supra* at 421. "An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." *Baldwin Crane & Equip. Corp., supra*, quoting from *Sandbulte* v. *Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 464 (Iowa 1984). Wilson's unsupported assertions notwithstanding, nothing in the record here justifies imposing on Cooney fiduciary obligations to Wilson given the absence of the requisite special circumstances as described in *Bicknell, Inc., supra*, and *Baldwin Crane & Equip. Corp., supra*.

another of Cooney's clients, SMG, no longer carried vicarious liability insurance. Wilson is correct that there are times when a promisor may be liable in tort, not only to the promisee, but also to potential beneficiaries of the promisee. See, e.g., *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 501 (1967) (plaintiff contractor could recover in tort for negligence of defendant engineer even though defendant made no direct promise to plaintiff); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 26-30 (1979) (corporate president could be liable to employee's widow for failure to obtain worker's compensation insurance, despite no express promise to widow); *Rae*, 386 Mass. at 192-193 (insurance agent/broker owed duty to deceased employee's beneficiary under policy). In other words, "by entering into a contract with A, the defendant may place himself in such a relationship with B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured." *Rae*, 386 Mass. at 192, quoting from Prosser, Torts § 93, at 622 (4th ed. 1971).

We limit liability in these circumstances, however, to cases where "the plaintiff's harm was the foreseeable result of [the defendant's] negligence" in that the plaintiff rightfully relied on the defendant and "the defendant knew that the plaintiff would rely on his services" or the defendant should have anticipated the plaintiff's reliance and resulting harm. *Rae*, 386 Mass. at 193. See *Flattery*, 397 Mass. at 147; *Quigley* v. *Bay State Graphics, Inc.*, 427 Mass. 455, 461 (1998); *Martinonis* v. *Utica Natl. Ins. Group*, 65 Mass. App. Ct. 418, 421-422 (2006); Restatement (Second) of Torts § 435 comment b (1965) ("if the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is universally regarded as the legal consequence of the actor's negligence"). Compare *Capital Site Mgmt. Assocs.* v. *Inland Underwriters Ins. Agency, Ltd.*, 61 Mass. App. Ct. 14, 17-18 (2004) (insurance agency was asked by client to renew client's blanket fire policy covering numerous specific properties, was aware that the policy it obtained excluded vacant properties, but violated its duty by failing to investigate whether any of client's scheduled properties had become vacant and therefore uncovered). In the context of a

party's failure to obtain insurance, a plaintiff's reliance is deemed rightful or reasonable when the defendant was required by statute to maintain the insurance. *Flattery*, 397 Mass. at 147. A contractual obligation may also support a claim of foreseeable reliance when the defendant knows of the reliance. *Quigley*, 427 Mass. at 461.

As noted at the beginning of the discussion, the instant facts provide no rational or legal basis for either foreseeability or reliance. We view this case as analogous to *Flattery*, where the Supreme Judicial Court found a lack of foreseeable reliance on the part of the plaintiff:

> "There is some similarity between [*LaClair, Rae,* and *Craig*] and the present case. However, there is at least one critical distinction between them, and that distinction is fatal to the plaintiff's tort claim. In each of the cited cases involving workmen's compensation insurance, the plaintiff rightfully and foreseeably expected the insurance to be in effect and relied on it. The expectation was rightful and foreseeable because the insurance was mandated by statute. Also, foreseeable expectation and reliance were present in *Craig* v. *Everett M. Brooks Co., supra.* In the present case, however, the plaintiff clearly did not foreseeably rely on [the defendant's] motor vehicle being insured in an amount greater than that required by G. L. c. 90, § 34A (1984 ed.). We have never held that in the absence of foreseeable reliance on the promised services being performed by someone, a promisor of services may be liable in tort not only to the promisee but also to potential beneficiaries of the promise. To the contrary, we have recently declared that '[w]hile [our decision in *Craig, supra,*] is an example of our recognition that tort liability may exist in the absence of privity of contract, . . . recovery under the principles of *Craig* is limited to instances "where the defendant knew that the plaintiff would rely on his services." *Rae* v. *Air-Speed, Inc.,* 386 Mass. 187, 193 (1982).' *Page* v. *Frazier,* 388 Mass. 55, 64 (1983)."

*Flattery*, 397 Mass. at 147. See *Quigley*, 427 Mass. at 461 (concluding "that [the owners of the building] have not established that they 'rightfully and foreseeably' relied on any promise by [the insurance agent] to [the commercial tenant of

the building] to obtain coverage naming them as loss payees of the insurance agreement procured by [the tenant]"). See also *Robinson* v. *Charles A. Flynn Ins. Agency, Inc.*, 39 Mass. App. Ct. 902, 902 (1995) (there is no "general duty" owed by insurance agents in Massachusetts to inform and advise clients as to appropriate amounts of coverage in absence of "special circumstances of assertion, representation and reliance").

If the issue were Cooney's liability *to SMG* because Cooney failed to inform SMG of the change in vicarious liability coverage, there is no question Cooney would have a duty to inform SMG about changes in its coverage. That is so because it would be reasonable for SMG to rely on Cooney with respect to its coverage and risk exposure, and the harm suffered by SMG (incurring vicarious liability in the Jones action) would be the foreseeable result of Cooney's negligence in failing to inform it that it no longer carried the coverage.

With regard to Wilson, however, the analysis is entirely different. There was no evidence introduced at trial that Cooney knew (or that it should have known) that Wilson was relying on Cooney to inform him when SMG no longer carried vicarious liability coverage — indeed, there was no evidence that Wilson ever knew whether SMG had such coverage, or that he ever did or failed to do anything on the basis of SMG's vicarious liability coverage (or the absence thereof). In attempting to impose a duty on Cooney in these circumstances, Wilson improperly conflates the obligations Cooney may have owed to SMG with those he asserts were owed to Wilson. The only fact that Wilson cites that even remotely supports imposing any duty in this case is that Cooney knew Wilson was an independent contractor of SMG. This fact alone, however, is insufficient, because it was uncontroverted at trial that Cooney never saw the SMG-Wilson independent contractor agreement. Furthermore, even if Cooney were privy to the SMG-Wilson independent contractor agreement, that agreement did not require SMG to carry vicarious liability insurance, a requirement in order for Wilson to establish the kind of foreseeable reliance set forth in *Craig*, 351 Mass. at 501, or *Quigley*, 427 Mass. at 461-462.

In addition, any reliance Wilson may have allegedly placed on Cooney to inform him about changes to SMG's coverage

was neither rightful nor reasonable. SMG was not required to maintain vicarious liability coverage by statute or by contract. Wilson never discussed the status of SMG's vicarious liability coverage with anyone at Cooney or SMG prior to the Jones action, nor did he know of its status. Neither Wilson nor SMG told Cooney that Wilson should be kept informed of changes in SMG's policy. The reason is clear: the purpose of SMG's vicarious liability coverage was to protect SMG, not Wilson. Even if it could be concluded that SMG's lack of vicarious liability coverage ultimately resulted in harm to Wilson (but see *supra*), any such harm was indirect, a consequence of the SMG-Wilson independent contractor agreement of which Cooney had no knowledge and which Cooney had never seen. In sum, there is no legal reason for one policyholder to expect his insurance agent to inform him of changes in another policyholder's insurance coverage absent special circumstances, i.e., knowledge by the agent that the former is in fact relying on the agent to keep him apprised of those changes.

The judgment is reversed, and a new judgment in favor of the defendant is to be entered.

*So ordered.*