MERIDIAN AT WINDCHIME, INC. *vs.* EARTH TECH, INC.,
& others.[1]

No. 10-P-2249.

Bristol. October 6, 2011. - January 17, 2012.

Present: GRAINGER, FECTEAU, & AGNES, JJ.

*Negligence,* Engineer, Municipal employee. *Subdivision Control,* Plan.

In a civil action brought by a subdivision developer against an engineering
firm hired by a town as a consultant to inspect the developer's work, in
which the developer alleged that the engineering firm was negligent in fail-
ing to identify deficiencies in work performed by the developer's contrac-
tor, the judge properly granted summary judgment in favor of the engineer-
ing firm, where the developer's claim fell outside the duty in tort of a
professional to a third party, in that it was neither reasonable nor foresee-
able that the developer would rely on the engineering firm's performance
of its contractual obligations to the town in ensuring that the developer's
own contractor complied with the requirements of the approved subdivi-
sion plan and the town's rules and regulations. [131-135]

CIVIL ACTION commenced in the Superior Court Department on
February 1, 2007.

The case was heard by *Thomas F. McGuire, Jr.,* J., on a mo-
tion for summary judgment.

*William R. Landry* for the plaintiff.

*Julie Pruitt Barry* for the defendants.

AGNES, J. The plaintiff, Meridian at Windchime, Inc. (Merid-
ian), the developer of a subdivision in the town of North Attle-
borough (town) known as Windchime, challenges the allowance
of a motion for summary judgment in favor of the defendants
(collectively, Earth Tech), an engineering firm hired by the
town as a consultant to inspect Meridian's work, on grounds
that Earth Tech was negligent in failing to identify deficiencies

―――――――――――――
[1]Earth Tech Engineering Corp.; Earth Tech Environment and Infrastructure,
Inc.; and Tyco International, Ltd.

in work performed by Meridian's contractor that Meridian was forced to correct at a considerable additional cost. Because Meridian's claim falls outside the scope of the duty in tort of a professional to a third party under the doctrine announced in *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497 (1967), we affirm.

1. *Factual background.* a. *Formal arrangements for Windchime.* These facts largely are drawn from the parties' consolidated statement of facts, viewed in the light most favorable to Meridian, the nonmoving party. The events that are the subject of this case occurred between 2002 and 2005 in a residential development in the town. Meridian engaged the services of a project engineer, DiPrete Engineering Associates, which prepared the site and engineering plans for the Windchime subdivision; a project manager, Richard Burton, of Meridian Real Estate Services, Inc.; and a contractor, Spring Garden Sand & Gravel, Inc., to construct the infrastructure. Meridian's contractor agreed to correct any defects in its work found within one year of substantial completion of the project. The town's planning board, in turn, in accordance with the town's subdivision rules and regulations, hired Earth Tech to conduct so-called "subdivision reviews and inspections."[2] Meridian is not party to the contract between the town and Earth Tech. In accordance with § 4.2.1(c) of the rules and regulations, the cost of hiring Earth Tech was paid entirely by Meridian. Earth Tech conducted a definitive plan review of Meridian's proposed subdivision plan, as well as its revised plans, and submitted reports along with corresponding invoices only to the town. Those invoices were paid exclusively by the town based on the funds deposited by Meridian.

According to § 7.1.1 of the rules and regulations, the inspection function for which the town hired Earth Tech included the "installation of underground utilities and services" as well as the roadways and sidewalks. Earth Tech's contract with the town provides for the manner of reporting to the town[3] and the

___

[2]There is no dispute that the infrastructure constructed by Meridian's contractor to serve the Windchime project was to become the property of the town.

[3]"Prepare technical reports of our findings for the Planning Board's consideration."

manner of carrying out its responsibilities,[4] and restricts its activities with respect to Meridian's contractor.[5]

Prior to undertaking its work, Earth Tech gave Meridian a written memorandum informing it that Earth Tech would conduct "inspection services on an as needed basis, when requested by the Planning Board." The memorandum also reiterated that "approved definitive plans" governed and "[a]ny field changes from the definitive plan shall be discussed with Earth Tech. Any field change made by the contractor without prior approval of Earth Tech, will be performed at the contractor's risk. Earth Tech will decide if changes need approval from the Planning Board." Finally, the memorandum provides that "Earth Tech, Inc. will provide a written report of the inspection to the Planning Board, noting completions and deficiencies. Any deficiencies will be immediately brought to the contractor's attention in the field for correction."[6]

b. *Actual practice of constructing Windchime's infrastructure.* Meridian offered evidence that "Earth Tech did not require (or obtain) approval from the Planning Board for each inspection. Rather, Earth Tech had a continuous (almost daily) role of inspecting the work as it was performed (over a period of roughly two years) and filling out Daily Reports regarding it and providing those reports to the plaintiff (Meridian) and the Town. . . . Earth Tech was on site to inspect the work every few days, and

---

[4] "Field observations shall be conducted by the ENGINEER to evaluate the completed work of the contractor for substantial conformance to the current Planning Board Rules and Regulations and approved Contract Documents."

[5] "The ENGINEER shall not, during such visits, or as a result of such observations of the Contractor's work in progress, supervise, direct, or have control over the Contractor's work, nor shall the ENGINEER have authority or responsibility for the methods and procedures of construction selected by the Contractor, . . . or failure of the Contractor to comply with all other laws, rules, regulations, ordinances, codes, or orders incident to the work of the Contractor."

[6] Earth Tech's memorandum also included details of the inspections it anticipated conducting of several aspects of the project, including "Underground Utilities." With reference to the storm drains, the memorandum stated that it was anticipated that the "inspection should be conducted after installation of piping and drain structures, but prior to backfilling." Likewise, the memorandum stated that it was anticipated that the inspection of the "sanitary sewer system" would take place "after installation of piping and sanitary structures, but prior to backfilling."

sometimes daily over a period of approximately 2 years." Meridian also offered evidence that Burton interacted regularly with Earth Tech's engineering inspectors and developed a close working relationship with them. Earth Tech was the only engineering firm on site that was carrying out inspections.[7]

Earth Tech's inspection work over the course of the Windchime project is reflected in a series of approximately fifty written daily reports containing detailed statements of specific tasks performed or about to be performed by Meridian's contractor. In some instances these reports indicate whether the work performed by the contractor complies with requirements of the town's rules and regulations (accompanied by photographs of the work), contain information about the requirements of the town's rules and regulations, and point out specific deficiencies. Meridian also offered evidence that it relied on the inspection activities by Earth Tech "as our best protection against costly problems down the road whereby defective work might have to be corrected after other work above (or around) it had been completed after inspections, necessitating . . . destruction and re-construction of completed road/infrastructure elements."

c. *Problems that required infrastructure reconstruction.* Late in 2002 and again in 2004 it was discovered that Meridian's contractor had improperly installed water lines, fire hydrants, granite curbing, sewer hole covers, and other features of the infrastructure. The contractor's work had to be redone, and in some cases, ground had to be dug up to gain access to the improperly constructed infrastructure. Meridian offered evidence that, in some cases, Earth Tech did not identify the shortcomings and deficiencies with the contractor's work; and that if Earth Tech had conducted the inspections it was required to perform in a timely manner, Meridian would have been able to correct some of the deficiencies at far less cost by avoiding the need to dig and regrade the surface. Meridian's contractor was voluntarily dissolved on December 30, 2005.

2. *Discussion.* a. *Standard of review.* Our review of the

---

[7]For purposes of reviewing the grant of summary judgment, we accept Meridian's claim that its own project engineer was not regularly reviewing the work of its contractor.

allowance of a motion for summary judgment is de novo, see
*Miller* v. *Cotter*, 448 Mass. 671, 676 (2007), and turns on the
answers to two questions. First, are all the material facts
established in the record? Second, does the governing law entitle
the successful party to judgment? See *Augat, Inc.* v. *Liberty
Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). We examine the
factual materials in the light most favorable to the nonmoving
party. *Jupin* v. *Kask*, 447 Mass. 141, 143 (2006). Although
Meridian's complaint sought recovery under both tort and
contract theories, this appeal is concerned exclusively with the
claim by Meridian that Earth Tech owed it a duty of care as a
professional under contract with a third party, i.e., the town.[8] In
a well-reasoned memorandum, the motion judge concluded that
Earth Tech did not owe a duty of care to Meridian and that
there was no basis for a finding of liability.

b. *Legal duty.* "The existence of a legal duty is a question of
law appropriate for resolution by summary judgment." *Afarian*
v. *Massachusetts Elec. Co.*, 449 Mass. 257, 261 (2007). "If no
such duty exists, a claim of negligence cannot be brought."
*Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004). In Mas-
sachusetts, duty is "determined by balancing the foreseeability
of harm, in light of all the circumstances, against the burden to
be imposed." *Vaughan* v. *Eastern Edison Co.*, 48 Mass. App. Ct.
225, 229 (1999) (citation omitted). See *Whittaker* v. *Saraceno*,
418 Mass. 196, 198-199 (1994); *Jupin* v. *Kask, supra* at 146-147.

c. *Liability of professional to third party for negligent
performance of contract.* In *Craig* v. *Everett M. Brooks Co.*,
351 Mass. at 498, 500, the defendant civil engineering firm,
under contract with a landowner, was tasked to lay down "offset
stakes" that it knew would be used by the plaintiff, a third-party
contractor, to mark the location and grades of a road the con-
tractor was to build for the landowner. The civil engineering
firm knew the identity of the contractor, knew that the purpose
of the staking was to enable the contractor to build the road,
and knew that the contractor would rely on the "offset stakes"

---

[8]In particular, Meridian has not sought review of the adverse ruling by the
motion judge on its claim that it was an intended beneficiary of the contract
between Earth Tech and the town. See *Anderson* v. *Fox Hill Village Home-
owners Corp.*, 424 Mass. 365, 366-367 (1997).

in grading and locating the road. *Id.* at 500. Notwithstanding the absence of any contractual relationship between the civil engineering firm and the contractor, the Supreme Judicial Court reasoned that to bar recovery simply because there was no contract between them, in circumstances in which the civil engineering firm knew the identity of and the extent of reliance on the only possible plaintiff and where damages were not remote, would be contrary to evolving principles of tort law whereby in the absence of any express agreement, a party is liable to a third party for the foreseeable consequences of the negligent performance of a contractual duty that the third party owed to another. *Id.* at 501. The rule in *Craig* is referred to as "the *Craig* principle of foreseeable reliance." *Page* v. *Frazier*, 388 Mass. 55, 65 (1983).

In a series of decisions subsequent to *Craig*, the appellate courts have refined the scope of the *Craig* doctrine. Whether a consequence is foreseeable is measured by an objective standard and calls for consideration whether the injured party's reliance on the services performed by the negligent party was reasonable. See *Wilson* v. *James L. Cooney Ins. Agency*, 66 Mass. App. Ct. 156, 163 (2006). See also *McDonough* v. *Whalen*, 1 Mass. App. Ct. 573, 578 (1973), *S.C.*, 365 Mass. 506 (1974) (in order to recover under *Craig*, plaintiff must prove that its reliance on allegedly negligent service performed by one with whom it was not in privity was justified). "[T]he critical document is the contract" between the negligent party and the party who paid for its services. *Parent* v. *Stone & Webster Engr. Corp.*, 408 Mass. 108, 113 (1990).

Under *Craig*, the determination whether the plaintiff's reliance on the services performed by the negligent party was known to that party is not satisfied by evidence that the plaintiff believed that the defendant was aware of its reliance. See *Quigley* v. *Bay State Graphics, Inc.*, 427 Mass. 455, 461-462 (1998). The allegedly negligent party must have "actual knowledge" of the plaintiff's reliance on its services. See *Nycal Corp.* v. *KPMG Peat Marwick LLP*, 426 Mass. 491, 495 n.4 (1998).

d. *Application of* Craig *doctrine to undisputed facts*. In *Craig*, the allegedly negligent party knew that the "offset stakes" it was obliged to set down were for the "precise purpose" of allowing

the contractor to build the road. *Craig* v. *Everett M. Brooks Co.*, 351 Mass. at 500. In the case at bar, on the other hand, the contract between Earth Tech, the allegedly negligent party, and the town provided that Earth Tech shall have no "authority or responsibility for the methods and procedures of construction selected by the Contractor." Furthermore, and of critical importance, at the outset of the Windchime project, Earth Tech supplied Meridian with a written memorandum in which it informed Meridian that any deviation from the approved subdivision plans in the construction of the infrastructure for Windchime, "without prior approval of Earth Tech, will be performed at the contractor's risk." Finally, and most fundamentally, this case is distinguishable from *Craig* because Meridian hired its own project engineer for Windchime. The fact that the project engineer may have failed to honor its contractual obligations to Meridian does not, standing alone, justify Meridian's reliance on the work performed by Earth Tech. See *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 368 (1997) ("failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made").

Meridian argues that there are genuine issues of material fact in dispute based on the assertions contained in its engineer's affidavit. For example, Meridian's engineer maintains that its "infrastructure contractor, now defunct, was responsible for the *construction* of the infrastructure, but was not responsible for the Engineering Inspection Function of the project. That function was 'owned' and controlled by Earth Tech, the town's only approved engineering inspector." Meridian also points to the fact that it actually relied on the daily reports prepared by Earth Tech as its "best protection against costly problems down the road whereby defective work might have to be corrected after other work above (or around) it had been completed after inspections, necessitating . . . destruction and re-construction of completed road/infrastructure elements."

Insofar as Meridian contends that Earth Tech was the only inspector that the town would permit to act as its agent, the assertion is true, but of no assistance in Meridian's effort to prove reasonable reliance. There is no evidence in the record that the town prohibited Meridian from employing its own engineering

firm to advise its contractor how to comply with the requirements of the approved subdivision plan and the town's subdivision rules and regulations. In fact, Meridian did hire a project engineer, but elected to rely on the town's consultant.

Meridian's other so-called genuine issues of material fact are simply statements of its belief that it was reasonable for it to take the risk that it could rely on the town's consultant to ensure that its (Meridian's) performance was in compliance with its legal obligations. However, in view of the nature of Earth Tech's contract with the town and Earth Tech's explicit, written memorandum issued to Meridian, it was neither reasonable nor justifiable for Meridian to rely on Earth Tech's performance of its contractual obligations to the town in ensuring that Meridian's own contractor complied with the requirements of the approved subdivision plan and the town's rules and regulations. See *Page* v. *Frazier*, 388 Mass. at 66.

3. *Conclusion.* Under the *Craig* principle of reasonable reliance, a professional employed by a town to inspect the construction of a subdivision does not owe a duty of care to a developer or its contractor with whom the professional has no contractual relationship unless it was foreseeable and reasonable for the developer or its contractor to rely on the services provided to the town by the professional, and the professional had actual knowledge that the developer or its contractor was relying on the professional's services. Because the record, when viewed in a light most favorable to Meridian, fails to show a genuine issue of material fact that would support the application of the *Craig* principle, the judge's allowance of summary judgment was not error.[9]

*Judgment affirmed.*

---

[9]We decline to award the appellate attorney's fees requested by Earth Tech.