Louis F. Aguiar & others[1] *vs.* Generali Assicurazioni
Insurance Company.

No. 97-P-253.

Bristol. March 11, 1999. - September 9, 1999.

Present: Kass, Jacobs, & Laurence, JJ.

*Contract,* Insurance. *Insurance,* Fire, Condition precedent, Coverage, Waiver. *Waiver.*

Where the provisions of G. L. c. 175, § 99, as amended through St. 1985, c. 464, § 2, prescribing the standard form of a fire insurance policy in Massachusetts, suspend coverage for premises vacant or unoccupied for over thirty consecutive days, owners of property that had been unoccupied for forty-nine consecutive days could not claim a reasonable expectation of coverage under their standard policy. [690-691]

A notification by an insurance agent regarding security measures to be taken with respect to the insured premises did not revise or extend the applicable fire insurance coverage. [691-692]

Civil action commenced in the Superior Court Department on June 16, 1994.

The case was heard by *Patrick F. Brady*, J., on a motion for summary judgment.

*Christopher F. Long* for the plaintiffs.

*Michael D. Chefitz* for the defendant.

Kass, J. On November 5, 1992, fire destroyed an unoccupied restaurant owned by the plaintiffs, Louis F. Aguiar and Fernando N. Lopes, as tenants in common. Aguiar gave notice of the loss to the defendant insurer, Generali Assicurazioni Insurance Company (Generali), which denied coverage. There were two principal grounds for that denial: (1) the policy contained a provision, mandated by statute, that liability for loss from fire would not attach should the insured premises be vacant for thirty consecutive days, and the premises, at the time of the fire,

---

[1]Fernando N. Lopes, Ana M. Lopes, and Mediterranean, Inc.

had been vacant forty-nine consecutive days; and (2) the policy was void as a consequence of material misrepresentations by the insured parties when they applied to Generali for insurance. Aguiar and Lopes claim that the policy defeats reasonable expectations and that, in any event, the insurer had waived the occupancy condition. They brought an action for their fire loss against Generali, with counts under G. L. c. 176D, § 3(9), and c. 93A, § 11. We decide that a motion for summary judgment was rightly allowed in favor of Generali on the basis of the first point, i.e., that the premises were left vacant for more than thirty consecutive days. We, therefore, do not reach the second basis that Generali asserts for denying coverage.

1. *Facts.* We recite the undisputed facts material to the defense that the owners had left the property vacant for more than thirty consecutive days. Aguiar and Lopes bought the property, located in Westport, in 1988, and organized Mediterranean, Inc., to operate there a restaurant called the Mediterranean.[2] In 1990, Aguiar, because the economy was slack, wanted the restaurant to be less upscale. Lopes differed and the parties agreed that Lopes would disengage from the direction of the restaurant business. Aguiar organized a new corporation, American Legion Highway Enterprises, Inc. (American Legion), to operate the restaurant, now known as Galleria II, with two new venturers, Gerard DiSanto and Robert Ashness, each of whom acquired one-third of the stock issued by American Legion; Aguiar held the remaining third.

American Legion entered into a lease with Aguiar and Lopes, who continued to own the real estate. In July, 1992, Aguiar undertook to replace existing insurance that was due to expire September 26, 1992. Through his insurance agent, the Maury Kusinitz Insurance Agency (the Kusinitz agency), Aguiar applied to Generali for casualty insurance coverage on the property on behalf of himself, Lopes and his wife (although she appeared to have no insurable interest), and American Legion. Generali issued a policy for the period September 30, 1992, to September

---

[2]Aguiar and Lopes each owned fifty per cent of the stock in Mediterranean, Inc. Ana Lopes, a named plaintiff and Lopes's wife, was an employee of Mediterranean, Inc., and referred to as a "coowner" of the restaurant. She gave her guaranty of a mortgage note given by Mediterranean, Inc., in connection with the property.

30, 1993, and Aguiar paid the $5,941 premium.[3] The coverage was $290,000 for the building and $50,000 for its personal property contents. The restaurant closed for the season on Labor Day, 1992. It remained unoccupied, with all utilities shut off, until the November 5 fire.

In the year it burned down, the property was remarkably vulnerable to incendiaries — what Lieutenant William G. Baraby of the Westport fire department called fire "intentionally set by human intervention." As we rest our decision on the first ground urged by the defense (as did the motion judge), that arson history is only of peripheral interest, but it illuminates why an insurer would be concerned about an unoccupied building. On February 23, 1992, the fire department responded to a call to investigate a smell of gasoline at the restaurant. It turned out the floor of the attic in the restaurant building had been saturated with gasoline. While checking that out, Lieutenant Baraby observed charring and smoke stains in the attic from an earlier fire which in his judgment had been intentionally set but did not spread.[4] Fire broke out at the restaurant on September 17, 1992, nine days before the existing insurance policy would expire. The fire was contained. Lieutenant Baraby concluded it had been set. On October 28, 1992, the Westport police noticed the back door to the shut property open, investigated, and found the remains of a wastepaper basket fire in a ladies' room. That fire did not spread. On November 5, as noted, the entire building was destroyed by fire, a blaze that Lieutenant Baraby described as "incendiary in origin and caused by human intervention." The Kusinitz agency had notified Aguiar that the Generali policy was being canceled effective midnight of November 5 because of misrepresentations in the application for insurance; the fire erupted that evening before midnight.

2. *Discussion.* Section 99 of G. L. c. 175, as amended through St. 1985, c. 464, § 2, prescribes a standard form of fire insurance policy in Massachusetts. See *Pappas Enterprises, Inc.* v. *Commerce & Indus. Ins. Co.,* 422 Mass. 80, 81 (1996). Among the provisions required by § 99 is the following:

---

[3] The policy named as persons insured Aguiar, Lopes, Ana Lopes (notwithstanding her lack of insurable interest), and Mediterranean, Inc.

[4] The gasoline pour was traced to Randall Schaller, an assistant manager of the restaurant. Schaller pled guilty in United States District Court to attempted arson. A jury sitting in United States District Court convicted DiSanto, the manager and a stockholder in American Legion, of attempted arson.

> "Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring . . . (b) while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of . . . thirty consecutive days. . . ."[5]

That precise language appeared in amendatory Massachusetts endorsements to the policy under the caption "Conditions suspending or restricting insurance."[6] That the restaurant premises had been vacant more than thirty consecutive days at the time of the loss is undisputed. Nevertheless, the plaintiffs argue they are entitled to damages under the policy because (a) their reasonable expectation as purchasers of the insurance contract is that they were covered, and (b) Generali had waived the provision.

(a) *Reasonable expectation.* The plaintiffs suggest that one who buys fire insurance expects to be protected against — well — loss by fire. Of course it cannot be as simple as that, because an insurance policy is full of requirements and conditions, some of which can be altered by amendments to the policy, more often than not in consideration of an additional premium to reflect the altered risk. But, the plaintiffs say, they did not receive the actual text of the policy until after the loss and the disavowal by Generali of liability. To that there may be two responses. *First,* as the occupancy requirement is of statutory origin, it would have appeared in every fire policy that the plaintiffs had read, assuming they had read one. The plaintiffs had no reason to expect the condition would be absent from the Generali policy. There was no history of negotiation for amendment of the occupancy requirement. *Second,* an insured is charged with his agent's knowledge of the terms and conditions of an insurance policy. The Kusinitz agency was the plaintiffs' agent. See *Century Indem. Co.* v. *Jameson,* 333 Mass. 503, 504 (1956); *Commercial Union Ins. Co.* v. *Connors,* 42 Mass. App. Ct. 538, 542 (1997); Restatement (Second) of Agency § 272 (1958); 3 Couch, Insurance § 46.21 (3d ed. 1995).

Massachusetts cases have smiled upon, even if not yet wholly

---

[5]The thirty-day vacancy provision applies to commercial occupancies. There is a sixty-day vacancy provision for residential premises of three units or less.

[6]The occupancy condition also appeared in § 5 of the Massachusetts amendatory endorsement.

embraced, the process of analyzing a provision of an insurance contract in light of the reasonable expectation of the insurance buyer. See *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 142 (1981); *Bond Bros., Inc.* v. *Robinson*, 393 Mass. 546, 551-552 (1984); *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985); *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990) (applying the doctrine in favor of policyholder); *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993) (same); *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 476-478 (1987); *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 388 (1988); *LaFrance* v. *Travelers Ins. Co.*, 32 Mass. App. Ct. 987, 988 (1992); *Hingham Mut. Fire Ins. Co.* v. *Niagara Fire Ins. Co.*, 46 Mass. App. Ct. 500, 504 (1999). To the idea of effectuating reasonable expectations of buyers of insurance, standardized contract provisions prescribed by government regulation are a limiting case; i.e., reasonable expectations would not defeat a condition prescribed, as here, by government regulation. See Restatement (Second) of Contracts § 211 comment e (1981). When reasonable expectations analysis comes into play, it is more likely to do so when the task is to interpret an ambiguous provision rather than an *un*ambiguous one whose meaning, as in this case, no one disputes. See *Bond Bros., Inc.* v. *Robinson*, 393 Mass. at 551; *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. at 700 (appropriate to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered). Besides, the reasonable expectations approach in this case does not advance the cause of the plaintiffs. They could not reasonably have expected that leaving the building vacant did not alter the underwriting conditions.

(b) *Waiver.* The plaintiffs' argument of waiver is pitched primarily on a letter from Generali's regional managing agent, James Kelley, to an employee of the Kusinitz agency, dated October 26, 1992, in which Kelley notifies the Kusinitz agency that certain security measures will have to be taken if the building is left "unused for any long period." That letter does not amount to a revision of the fire insurance contract. Binding waivers commonly make their appearance in insurance cases, see, e.g., *Jackson & Co.* v. *Great Am. Indem. Co.*, 282 Mass. 337, 342 (1933), and *Merrimack Mut. Fire Ins. Co.* v. *Nonaka*, 414 Mass. 187, 189-191 (1993), but waivers implied from

circumstances, knowledge, or conduct may not broaden the coverage of the insurance contract. *Stone* v. *Howard Ins. Co.*, 153 Mass. 475, 480-481 (1891). *Harris* v. *North Am. Ins. Co.*, 190 Mass. 361, 368 (1906). *Palumbo* v. *Metropolitan Life Ins. Co.*, 293 Mass. 35, 37-38 (1935). *Merrimack Mut. Fire Ins. Co.* v. *Nonaka,* 414 Mass. at 191. Broadening the coverage, so as for example to extend to premises that are vacant longer than thirty days, requires an amendment to the contract. *Palumbo* v. *Metropolitan Life Ins. Co., supra.*

Once the judge determined, correctly, that Generali was not liable for the fire loss to the plaintiffs' property, the counts in the complaint under G. L. c. 93A and G. L. 176D, § 3(9), fell away by derivation.

*Judgment affirmed.*