Sanders, Janet L., J.
This is an action seeking to enforce an attorney’s lien for fees and for a violation of G.L.c. 93A. On December 21, 2005, this Court (Botsford, J.) entered an order establishing liability of the defendants Paul A. Gargano and his firm, Gargano & Associates, on all counts against them. On March 22, 2007, this Court held a hearing to determine the amount of damages which should be assessed against the two defaulting defendants.[1] This Court concludes that the plaintiff is entitled to $24,967.14 in actual damages. I also conclude that the defendants willfully and knowingly violated 93A, entitled the plaintiff to double that amount together with attorneys fees and costs. I reach this conclusion based on the following findings of fact.[2]
The plaintiff Christopher Hug is an attorney who has been a member of the bar for 22 years. He specializes in workers’ compensation. In November 2000, Hug was hired by Anthony Pirelli to represent him on a workers’ compensation claim. Pirelli had been injured in an accident in 1988 and had been receiving workers’ compensation benefits. He was seeking a determination that he was permanently disabled. Prior counsel for Pirelli had obtained an offer of $55,000 as a lump sum payment for permanent disability. In taking the case, Hug was confident that Pirelli was entitled to more.
As this Court understands it, lawyers are limited by statute in the amount they can charge for attorneys fees in connection with many workers’ compensation claims, including those for partial disability and for medical benefits. The amounts are minimal — generally less than $1,000 — even though the work that the attorney may have to put in assisting the client (in collecting paperwork, dealing with creditors, and processing medical bills) may consume many hours of the *323 attorney’s time. If the employee is able to pursue a claim for a permanent total disability and receives a lump sum payment to settle such a claim, however, the attorney can collect some percentage of the settlement. Typically that percentage is 20 percent of any such recovery. See G.L.c. 152, §13A, §10. Forworkers’ compensation lawyers, this recovery is what ultimately reimburses them for the time they spend in connection with temporary or partial benefits, which usually precede the settlement of any permanent disability claim.
When Pirelli hired Hug, he executed a contingency fee agreement whereby Hug would receive 20 percent of any lump sum recovery in connection with a permanent disability claim. For the next four years, Hug went about the tasks of representing Pirelli on different claims for interim benefits, receiving the small statutorily authorized payments for his work. As a result of Hug’s efforts (most of which were uncompensated), Pirelli was able to obtain SSDI to supplement his workers’ compensation benefits, and received a cost of living adjustment on the partial disability benefits he was receiving. When Liberty Mutual (the workers’ compensation carrier) discovered it had overpaid Pirelli by $10,000, Hug negotiated repayment in a way which was least burdensome for Pirelli. Hug at one point did file a claim for permanent disability benefits (“Section 34A benefits”) but did not pursue it because Pirelli’s medical providers were not yet prepared to say that Pirelli was totally and permanently disabled.[3] While he pushed Pirelli’s doctors to make such a determination, Hug negotiated with the workers’ compensation insurer with the aim of increasing its offer of a lump sum payment from the $55,000 on the table when Hug took over the case.
By March 2004, Hug’s work started to pay off. Although Pirelli’s doctors were still not ready to declare him permanently and totally disabled, Liberty Mutual had increased its lump sum offer to $200,000. Hug was confident he could get more for Pirelli, who at 52 had many more years to live. In the meantime, Hug applied for interim “loss of function” benefits for Pirelli, whose partial disability benefits had run out. The next thing that Hug knew, however, Pirelli wrote him a letter, dated March 15, 2004, informing him that he was being discharged and that Pirelli was hiring the defendant Paul Gargano and his law firm Gargano & Associates to represent him.
Per Pirelli’s instructions, Hug within a week made a copy of his complete file available to the defendants, and informed them of the upcoming “conciliation” hearing on Pirelli’s loss of function claim. Hug simultaneously filed a Notice of Attorney’s Lien, which he sent by certified mail to the Department of Industrial Accidents, Liberty Mutual, Pirelli and the Gargano law firm. I find that the defendants Paul Gargano and the Gargano law firm received notice of this lien on or about March 25, 2004. Hug at the same time initiated a telephone call to the Gargano law firm and talked to associate Sean Beagan (see footnote 2, supra) with regard to settling the attorney’s lien on an informal basis by way of paying some “referral fee.” Beagan expressed interest in resolving the matter as Hug suggested. I find that these conversations constituted an acknowledgment by the defendants that Hug was entitled to share in any fee from a lump sum settlement so that he could be compensated fairly for his time and expenses.
Months went by and Hug heard nothing. On June 14, 2004, Hug sent the defendants a second notice of the attorney’s lien by certified mail. I find that the defendants received this notice as well. This notice too was filed with the Department of Industrial Accidents (“DIA”). At some point in early January 2005, Hug inquired of Liberty Mutual about the status of Pirelli’s case. He learned that a lump sum payment had months before been made to Pirelli in settlement of a total disability claim. Surprised that he had not heard anything from Gargano or Beagan, Hug looked up the DIA file on the case. He learned that a DIA judge had approved a lump sum settlement of Pirelli’s permanent disability claim in the amount of $300,000 on June 10, 2004 and in so doing, authorized a payment of attorneys fees to the Gargano firm only.
In order to obtain such approval, the claimant was required to file a “lien disclosure form” certifying that there were no outstanding liens for reimbursement out of the proceeds of the settlement. Pirelli signed the form under the “pains and penalties of peijuiy” stating that there were no such liens even though he (as well as Gargano) had received Hug’s notice. Pirelli was also required to submit an affidavit indicating his understanding of the settlement terms. In this typewritten affidavit, Pirelli falsely stated that Paul Gargano and Gargano & Associates had represented him from the inception of his claim. I find that the defendants Gargano and Gargano & Associates not only knew about Pirelli’s false representations to the DIA but actively assisted Pirelli in making those representations by drafting Pirelli’s affidavit stating that there were no outstanding liens, obtaining his signature on the affidavit and on the lien disclosure form, and then in the DIA proceeding, deliberately failing to disclose the existence of Hug’s attorney’s lien, even though they knew that the judge would rely on these misrepresentations in approving the settlement and the award of an attorneys fee to the defendants. I find that the defendants made these misrepresentations so that they would not have to share any part of their contingency fee with Hug.
As a result of the approval of the lump sum settlement in June 2004, the defendants were paid $58,760 for less than three months of representing Pirelli and appearing at the DIA only twice on his behalf. Hug, who had represented Pirelli for four years, received nothing. Hug estimates and this Court finds that Hug *324 put in close to sixty hours of work representing Pirelli, and incurred $967.14 in expenses for which he did not receive reimbursement. Moreover, his negotiations with Liberty Mutual in connection with a lump sum settlement for permanent disability were instrumental in persuading the insurance company to pay as much as it did.
After his discovery of the lump sum settlement and the defendants’ misrepresentations, Hug made repeated efforts to contact Gargano for an explanation. These efforts were unsuccessful: he was told that Gargano was out of the office or that the file was being retrieved. He wrote letters offering to resolve the case for a reasonable amount; the defendants did not respond. He pointed out that quite apart from his contingency fee arrangement with Pirelli, he had put in substantial work on the case and was therefore entitled to be reimbursed for the fair market value of his services on a quantum meruit basis. Hug heard nothing. In desperation, Hug went the DIA judge who had approved the settlement in June 2004. The defendants falsely told the judge that they had not received notice of the attorney’s lien. Hug contacted Liberty Mutual: he was told that a Liberty Mutual representative had specifically asked Gargano about the attorney’s lien before it sent the defendants a check for the attorneys fee and faxed the Gargano law firm another copy. The defendants assured Liberty Mutual that they would deal directly with Hug about his lien, thus inducing Liberty Mutual to send the full amount of the attorneys fee directly to Gargano. The defendants cashed the check from Liberty Mutual within a day of receiving from Hug the second notice of his attorney’s lien.
This lawsuit ensued. Hug has submitted an affidavit setting forth the time he expended in representing himself on his claim against Gargano and his law firm. I find that both the amount of time spent and the rate at which Hug bills for his services are reasonable. Those attorneys fees amount to $27,918.30.
RULINGS OF LAW
The Complaint asserts twelve counts against Gar-gano individually and against his law firm. Those counts seeking an award of damages include: breach of contract (Counts II and IX), quantum meruit (Counts III and X), fraud and deceit (Counts IV and X3), conversion (Counts VI and XIII), a violation of G.L.c. 221, §50 (counts VII and XV), and a violation of G.L.c. 93A (Counts V and XIV). A default as to liability has already entered against the defendants on each of these counts. The actual damages to which Hug is entitled is the same for each count: he is entitled that that sum of money will reasonably compensate him for the services that Hug rendered to Gargano. I find that such amount is $24,967.14. The Court makes this assessment with the following legal principles in mind.
Certainly, Pirelli was entirely within his rights to discharge Hug and hire Gargano and his law firm instead. That discharge terminated Hug’s right to recover under his contingency fee contract with Pirelli. Craft v. Kane, 65 Mass.App.Ct. 322 (2005); see also Opert v. Mellios, 415 Mass. 634, 636 (1993). However, Hug was entitled to be compensated for the fair and reasonable value of the services he rendered on his client’s behalf. Malonis v. Harrington, 442 Mass. 692 (2004). The underlying basis for this legal obligation is to prevent unjust enrichment of one party at the expense of another. At least initially, this obligation lay with Pirelli. When Gargano and his law firm undertook Pirelli’s representation, however, they did so understanding that Hug had represented Pirelli for many years and was entitled to be compensated for those services, which were instrumental in obtaining the lump sum settlement that Pirelli ultimately received from Liberty Mutual. Thus, to the extent that the defendants were awarded attorneys fees, they were required to share those fees with Hug so that he would be fairly and reasonably compensated for those services. To permit them to keep the entire award for themselves, having done little toward achieving that result, would result in an undeserved windfall. See Malonis, 442 Mass. at 697; see also Salamon v. Terra, 394 Mass. 857, 859 (1985).
In determining what is a fair and reasonable amount, this Court considers the value of the services Hug rendered, the time he actually spent assisting Pirelli, the overall result obtained, and the part that Hug played in obtaining that result (here the $300,000 pay-off). See Phelps Steel v. Von Deak, 24 Mass.App.Ct. 592, 595 (1987). Compared to the defendants’ representation of Pirelli, Hug worked over a span of four years for Pirelli, laying the groundwork necessary for his permanent disability claim. During the process of negotiating with Liberty Mutual, Hug obtained for Pirelli interim benefits so that Pirelli would not be forced to accept a lump sum settlement less than he was entitled to receive simply because he was financially strapped. Hug’s efforts on Pirelli’s behalf were effective: Liberty Mutual increased its offer of a lump sum settlement from $55,000 to $200,000 as of the date that Hug was discharged. Hug is lawyer with twenty-two years experience, most of that in the worker’s compensation area. Considering all of these factors, this Court concludes that a fair and reasonable compensation for Hug’s representation of Pirelli is $24,000. This Court arrives at this figure by using Hug’s hourly rate of $200, multiplying that by the estimated uncompensated time that he spent assisting Pirelli over the years (sixty hours), then doubling that amount ($12,000 times 2) in recognition of the part that Hug played in negotiating the lump sum settlement. Hug is also entitled to be paid his fair and reasonable expenses, which were $967.14. The total actual damages, then, is $24,967.14.
This amount also represents the actual damages that the plaintiff is entitled to receive for a violation of G.L.c. 93A and his claim for fraud. As my findings *325 make apparent, the defendants made numerous misrepresentations or material omissions of fact, beginning with the documents that they drafted for Pirelli’s signature stating that they were unaware of any outstanding liens, including attorney’s liens. They made these misrepresentations to a judge in order to obtain his approval of the lump sum settlement without Hug’s knowledge. They persisted in their misrepresentations in their dealings with Liberty Mutual in order to convince the insurance company to send them the check directly without notifying Hug. They then gave Hug the “run around” when he inquired about the case, and refused to respond to his reasonable offers to resolve the case without litigation. This conduct not only amounts to an unfair and deceptive business practice but was intentional and wilful. Accordingly, this Court doubles the amount of damages on the 93A counts for a total of award of $49,934.28.
Because the defendants violated G.L.c. 93A, Hug is also entitled to receive attorneys fees. That he represented himself does not change his entitlement to an award for those fees. Based on his uncontested affidavit setting forth the hourly breakdown of the time he spent on this litigation, this Court concludes a reasonable amount is $27,918.30.
CONCLUSION AND ORDER
For all the foregoing reasons, it is hereby ORDERED that judgment enter in favor of the plaintiff on all counts in the Complaint asserted against defendants Gargano and Gargano & Associates, and that plaintiff be awarded actual damages in the amount of $24,967.14. As to the 93A counts (V and XIV), this Court doubles the amount of damages for a total award of $49,934.28, plus attorneys fees and costs in the amount of $27,918.30.
In light of this Court endorsement of motions to dismiss brought by the remaining defendant Liberty Mutual, the plaintiffs counts against Liberty Mutual are hereby DISMISSED, with prejudice, as are the cross claims asserted against Liberty Mutual by the defendants Gargano and Gargano & Associates.

Also named as a defendant in this action is Liberty Mutual. The plaintiffs claim and the defaulting defendants’ cross claims against Liberty Mutual are the subject of separate motions filed by Liberty Mutual (allowed on today’s date). All references to the “defendants” in this memorandum are intended to mean Gargano and his law firm only.

With regard to the events giving rise to this case, the allegations in the Complaint and the plaintiffs testimony at the assessment hearing are essentially uncontested, since Gargano himself chose not to attend the hearing. Sean Beagan, who was directly involved in the events giving rise to this claim, was the attorney for Gargano and his firm and therefore made himself unavailable as a witness. The only witness called by the defendants was a lawyer offering expert testimony with regard to the question of damages. This lawyer, Vincent Tintendo, failed to disclose to the Court or to plaintiffs counsel at the time that he testified that he himself had represented Pirelli many years before on his quest for benefits. This omission affected the weight that the Court gave to Tintendo’s testimony.

Strictly speaking, the Section 34A claim was never “entered” on the docket, because there was then pending before the Department of Industrial Accidents a claim by Liberty Mutual to modify the amount payable to Pirelli under another section of the statute. Hug made a deliberate decision not to press the Section 34A claim after that pending matter was resolved because Pirelli at some point did get a job (if only briefly), thus making his claim that he was totally disabled from work appear less plausible, and his treating doctors were not yet willing to produce the opinion that Hug needed to be successful.