# United States Court of Appeals
## For the First Circuit

No. 12-1356

CHARLES FREEMAN AND DANIELA FREEMAN,

Plaintiffs, Appellants,

v.

TOWN OF HUDSON, TOWN OF HUDSON CONSERVATION COMMITTEE,
TOWN OF HUDSON POLICE DEPARTMENT, THOMAS CRIPPEN,
DAVID STEPHENS, RICHARD BRAGA, DEBBIE CRAIG, PAUL BYRNE,
DAVID ESTEVES, JEFF WOOD, THOMAS THORBURN,
COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL
PROTECTION AND JOSEPH BELLINO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Ripple[*] and Lipez,
Circuit Judges.

Barry Bachrach, with whom The Law Office of Barry Bachrach was on brief, for appellants.
Jonathan M. Silverstein, with whom Janelle M. Austin and Kopelman and Paige, P.C. were on brief, for appellee Town of Hudson.
James A. Sweeney, Assistant Attorney General, with whom Martha Coakley, Attorney General, and Ronald F. Kehoe, Assistant Attorney General, were on brief, for appellee Joseph Bellino.

---

[*]Of the Seventh Circuit, sitting by designation.

April 15, 2013

**HOWARD, Circuit Judge**.  Plaintiffs Charles and Daniela Freeman appeal the dismissal of their section 1983 suit against the Town of Hudson, Massachusetts, one of its agencies, and several state and local officials.  The events giving rise to this suit grew out of an allegation that the Freemans had breached a conservation restriction appurtenant to their Hudson home.  Like the magistrate judge and district judge, we conclude that the Freemans' complaint does not plead facts sufficient to support any of their federal claims, and we therefore affirm the judgment.

## I. Background

As the dismissal was entered pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the facts from the Freemans' complaint and draw all reasonable inferences in their favor.  San Juan Cable, LLC v. P.R. Tel. Co., 612 F.3d 25, 28 (1st Cir. 2010).  According to the complaint, what began as a dispute between neighbors turned into a concerted effort by the Town and the Commonwealth of Massachusetts to deprive the Freemans of their constitutional rights.  The plaintiffs insinuate a common sentiment, if not a common objective, running through the defendants' actions.  For ease of exposition, however, we dissever the allegations into smaller episodes.

A. Conservation Commission Defendants

In late fall of 2009, Hudson Police Sergeant Thomas Crippen, the Freemans' neighbor, informed the Hudson Conservation

Commission that the Freemans were building a tree house in a conservation restriction area ("Parcel B") on their property. In response, the Commission ordered the Freemans to cease and desist from any further activity in Parcel B until a scheduled Commission meeting in early December 2009. The property had previously been subject to an Order of Conditions issued by the Commission in 2007.

At the December meeting, Mr. Freeman conceded that the tree house was built in the conservation restriction area and agreed to move it. The Commission then questioned whether the Freemans were complying with state and local land-use laws relating to their property. Although the Commission had previously issued a Certificate of Compliance for the property (7 Freeman Circle) in 2008, a few weeks after the December meeting it determined that the Freemans had subsequently breached their obligations and that additional work was necessary to remedy the violations.

As a consequence, in January 2010 the Freemans' engineer presented a preliminary plan relating to remediation at 7 Freeman Circle. It appears that the Commission viewed this plan as insufficient, as it warned the Freemans that it would involve the Massachusetts Department of Environmental Protection ("DEP") if the Freemans did not comply with its determinations. In June 2010 the Commission issued a new Order of Conditions for 7 Freeman Circle detailing what modifications were required. The Freemans appealed this order to DEP.

Once involved in the case, DEP indicated that state enforcement would follow if the Freemans and the Commission could not resolve the issue at the local level. In response, the Freemans terminated their appeal of the Order of Conditions in September and began compliance work. Unaware that the Freemans had dropped the appeal, Commission Administrator Debbie Craig, accompanied by police escort, served Mr. Freeman a cease and desist order the same day that work began. For the next several days, members of the Commission ordered Mr. Freeman not to work on the property while they ascertained the legal status of the Freemans' appeal. On each of these visits to the Freemans' property, the Commission members were accompanied by Hudson Police officers.

The Freemans allege that throughout this process the defendants displayed heavy-handed tactics toward them and their associates. At a January meeting, Commission Chairman Paul Byrne and Commission Member David Esteves spoke with open hostility toward Mr. Freeman.[1] Moreover, Byrne and Craig spoke disparagingly about Mr. Freeman to third parties during the course of the ongoing dispute. Also, Esteves uprooted a portion of a silt fence on the Freemans' property, claiming that it was installed incorrectly, although a subsequent determination indicated that the fence met all installation requirements. According to the complaint, this

---

[1] Byrne made a thinly veiled reference to Mr. Freeman's dishonesty by stating, "If I was a farmer, I would not put the fox in charge of the hen house because all the hens will disappear."

-4-

hostile attitude pervaded DEP thinking as well.[2]   The complaint includes emails written by Joseph Bellino, a DEP employee, to show that DEP officials lacked impartiality in dealing with the Freemans.[3]

The Freemans further contend that, while zealously enforcing land-use laws against them, the Commission took little or no action against the Freemans' neighbors -- the Crippens and the MacPhees.  The Crippens had constructed a pool in the 100-foot buffer zone adjacent to Parcel B, and the MacPhees had cut down trees in Parcel B and laid down planks for a walking path.  In neither case did the Commission issue an order, and the Freemans assert that these violations largely went uncorrected.

B.  Police Department Defendants

In retaliation for the Freemans' dispute with the Crippens, the Police Department defendants purportedly pursued trumped-up criminal charges against Mr. Freeman.  After an unpleasant encounter with Mr. Freeman, neighbor Dana MacPhee spoke with Crippen and Hudson Police Captain David Stephens about Mr. Freeman's conduct.  Without further investigating the matter,

---

[2] The complaint listed DEP as a defendant. The district court dismissed all claims against DEP, and the Freemans have not appealed that decision.

[3] The most provocative email (between Bellino and Craig) refers to the sale of the Freemans' home in the following terms: "1.175 million- A Bahgain !!!!! Of course that doesn't include our $$$$$ [referring to a possible DEP fine]."

Stephens filed charges against Mr. Freeman for criminal harassment and threat to commit a crime. Although Mr. Freeman had committed no physical acts of violence, Stephens successfully argued to the court that Mr. Freeman should not be given notice of his probable cause hearing because he posed an imminent threat of violence to MacPhee. Stephens and Crippen both spoke with the prosecutor about the case on separate occasions. By January 2012, all charges had been dropped against Mr. Freeman.

## C. Building Commissioner Defendant

Finally, the Freemans claim that Hudson Building Commissioner Jeff Wood selectively enforced zoning laws against Mr. Freeman, who had posted a sign advertising his company at a work site. The complaint avers that the posting of such signs is standard practice among contractors, but Wood issued a violation notice to the property owner for displaying the sign.[4]

## II. Discussion

## A. Standard of Review

Our review of a district court's dismissal of a complaint under Rule 12(b)(6) is de novo. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). As such, we are free to affirm an order of dismissal on any basis made apparent from the

---

[4] The complaint also alleges that Electrical Inspector Thomas Thorburn selectively enforced licensing requirements against the Freemans' electrician. The Freemans have not pursued this allegation on appeal.

record. See Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008). In order to survive a motion to dismiss, the complaint must include "enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Ocasio-Hernández, 640 F.3d at 12 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While we need not give weight to legal conclusions contained in the complaint, "[n]on-conclusory factual allegations must . . . be treated as true." Id.

B. Scope of the Record

Before moving to the heart of the Freemans' appeal, we consider the question of which documents were properly before the district court when it decided the motion to dismiss. On a motion to dismiss, a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), or else convert the motion into one for summary judgment. Id.; Fed. R. Civ. P. 12(d). Here, the Freemans appended twenty-five exhibits to their complaint. Subsequently, both parties submitted a flurry of extrinsic exhibits for the district court's consideration on the motion to dismiss. The court took account of some documents but excluded others. The Freemans challenge the court's decision not to consider six documents that they submitted, while simultaneously suggesting that the court

-7-

relied on those very same documents in its order, presumably to the Freemans' detriment.[5]

Under certain "narrow exceptions," some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. Watterson, 987 F.2d at 3. These exceptions include "documents, the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint." Id. The plaintiffs' submissions do not fit into any of these enumerated categories.

The Freemans sought to have the court consider excerpts from the depositions of MacPhee and Stephens, given in connection with a separate civil suit, as documents sufficiently referred to in the complaint. While the complaint does make passing reference to testimony from MacPhee and Stephens, the proposed exhibits consist of excerpts that are unrelated to any matter discussed in the complaint, and therefore cannot be taken as referenced therein. The mere mention of the depositions in the complaint does not amount to sufficient reference. See Goldman v. Belden, 754 F.2d

---

[5] We have not previously clarified the standard of review that governs a court's determination that documents external to the complaint cannot be relied upon under Rule 12(b)(6). Because we would uphold the district court's judgment pursuant to either de novo or abuse of discretion review, we need not reach the issue here.

1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference.").

The Freemans also claim that three submissions should have been considered as public records. These include a transcript of 911 calls and two Hudson Police incident reports. The Freemans ask us to adopt the expansive view that any document held in a public repository falls within the category of extrinsic materials that may be considered. It is true that, when reviewing a motion to dismiss for failure to state a claim, a court may "consider matters of public record." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). But there are limits to that license. Many documents in the possession of public agencies simply lack any indicia of reliability whatsoever. In that regard, they are unlike official records, such as birth or death certificates and other similar records of vital statistics. The Freemans cite no authority -- other than Watterson -- for their broad interpretation, and we have found none. Rather, the phrase "official public records" when used in the present context, appears limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule of Evidence 201. Watterson, in holding that a court could consider public records on a motion to dismiss, relied on the Ninth Circuit case Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279 (9th Cir. 1986), abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino,

501 U.S. 104, 107 (1991). The public record at issue in that case was a state administrative proceeding, id. at 1282, and the Ninth Circuit used the term "public records" synonymously with a document susceptible to judicial notice. Id. (citing Phillips v. Bureau of Prisons, 591 F.2d 966, 969 (D.C. Cir. 1979) ("We are mindful, too, that when passing on a motion attacking the legal efficacy of the plaintiff's statement of his claim, the court may properly look beyond the complaint only to items in the record of the case or to matters of general public record.")).

Our cases applying Watterson may not have endorsed this view explicitly, but the results have been consistent with this approach. See, e.g., San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 n.2 (1st Cir. 2012) (taking notice of state court decisions); Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 47 n.1 (1st Cir. 2009) (taking notice of a state court decision); Parker v. Hurley, 514 F.3d 87, 90-91 (1st Cir. 2008) (taking notice of statewide curricular standards); Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005) (taking notice of federal statutes).

Other than invoking the label "public records," which is too broad a term to rely on, the Freemans make no developed argument as to why documents such as the 911 transcripts and police incident reports, which would not be subject to judicial notice, are either categorically or in this instance eligible to be

-10-

considered on a motion to dismiss. They thus have waived any other claim that the documents may be considered.

The Freemans' brief contains no argument at all with respect to the final exhibit at issue, which is a photograph. Any issue regarding this exhibit is thus also waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

We must iron out one more wrinkle on this topic, involving the Freemans' superficial assertion in their brief that "the district court mentioned facts from these exhibits in its decision." This simple allegation could have non-trivial consequences. Reliance on facts beyond the complaint's allegations might require converting the motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d). Although we could ignore this question as insufficiently briefed, see Zannino, 895 F.2d at 17, we are also satisfied that neither the magistrate judge's Report and Recommendation nor the district court's Order touch on facts outside the complaint. We therefore proceed to a 12(b)(6) analysis.

C. Freemans' Section 1983 Claims

42 U.S.C. § 1983 grants individuals the right to sue those acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

-11-

Columbia . . . [for] the deprivation of any rights, privileges, or immunities secured by the constitution and laws." 42 U.S.C. § 1983. To prevail, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).

### 1. Municipal Liability

The Freemans face additional requirements in order to establish a section 1983 claim against the Town and the Commission.[6] "A municipality cannot be held liable solely because it employs a tortfeasor." Monell v. Dept. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691 (1978). Instead, a plaintiff must show that the violation occurred as a result of the municipality's "policy or custom." Id. at 694. A single decision by a municipal policymaker constitutes official policy "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481, (1986). When determining whether a decisionmaker exercises final authority, "[c]ourts must look to state law, including 'valid local ordinances and regulations,' for

---

[6] The complaint also listed the Town of Hudson Police Department as a defendant. The district court, while dismissing all federal claims, did not specifically discuss the Police Department's liability. However, the Freemans have also failed to raise this issue on appeal, and therefore it is waived.

descriptions of the duties and obligations of putative policymakers in the relevant area at issue." Walden v. City of Providence, 596 F.3d 38, 56 (1st Cir. 2010) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 125, (1988)).

The Freemans have advanced only a "final authority" theory of municipal liability. The complaint, however, references no state or local laws establishing the policymaking authority of any individual or group of individuals. The complaint alleges misconduct from many separate actors, but gives no guidance about which acts are properly attributable to the municipal authority. Absent this information, the complaint fails to state more than respondeat superior liability on the part of the Town and the Commission. This is not enough to support a section 1983 action against a municipality, Monell, 436 U.S. at 691, and the district court correctly dismissed the claims against the Town and the Commission. We turn, then, to the claims against the individual defendants.

## 2. Equal Protection

The Freemans allege that Conservation Commission members Byrne and Esteves, Administrator Craig, and Building Inspector Wood violated the equal protection clause of the fourteenth amendment by selectively enforcing local laws against them. An equal protection claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such

-13-

selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted).

Claiming no membership in a protected class, the complaint argues that the defendants arbitrarily and unfavorably singled out the Freemans as a "class of one."  To prevail on such a claim, the Freemans must show that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The complaint fails to meet the "similarly situated" test, obviating any discussion of the rational basis requirement.  We have held that class-of-one claims require "an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves."  Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007).  In the land-use context, this means more than "point[ing] to nearby parcels in a vacuum and leav[ing] it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated."  Id.

a. Conservation Commission Defendants

According to the complaint, Craig, Byrne and Esteves abridged the Freemans' equal protection rights by treating them

-14-

differently from their neighbors, the Crippens and the MacPhees. While the properties of all three abut the same protected area, the similarities essentially end there. Their actions in relation to Parcel B differed in key respects, making them inapt comparators. The Commission determined that the Freemans had committed a number of violations, some of them within Parcel B and specifically governed by the Conservation Easement.[7] By contrast, the complaint alleges that the Crippens drained pool water into a buffer zone and that the pool encroached into the buffer zone. These allegations fail to demonstrate that the Crippens and Freemans were "similarly situated in all relevant respects." Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001). In the same vein, the Freemans' allegations that the MacPhees were allowed to plant inappropriate flora, cut down certain trees and install removable planks for a walkway fail to establish a claim for relief. The Conservation Easement -- which the district court considered -- allowed for certain plant cutting and trail maintenance. The Freemans, meanwhile, conceded that their treehouse violated the same Conservation Easement. Indeed, the complaint does not allege that either the Crippens or the MacPhees were in violation of the Conservation Easement.

---

[7] The Freemans admit to having constructed a treehouse in Parcel B. Additionally, the 2010 Order of Conditions found numerous violations relating to the placement of fences and walls, the amount of fill on the property, and the construction of other unauthorized structures.

Against this backdrop, the Freemans cannot demonstrate that they were similarly situated to their neighbors, and their equal protection claim against the Conservation Commission defendants necessarily fails.

b. Building Commissioner Wood

The complaint also alleges that Building Commissioner Wood violated Mr. Freeman's equal protection rights by selectively enforcing zoning laws against a customer who displayed Mr. Freeman's business sign. To the extent that this conduct concerned not Mr. Freeman's rights but those of Mr. Freeman's customer, the action cannot be maintained. While Mr. Freeman conceivably suffered some economic harm as a result of Wood's actions -- the lost value of advertising his work in the community -- this alone typically does not give rise to third-party standing. True, an "isthmian exception" does permit one to assert another's rights in circumstances where "some barrier or practical obstacle deters a third party from asserting its rights." <u>Wine & Spirits Retailers, Inc.</u> v. <u>Rhode Island</u>, 418 F.3d 36, 49 (1st Cir. 2005); <u>see</u> <u>also</u> <u>Powers</u> v. <u>Ohio</u>, 499 U.S. 400, 411, (1991) (stating that, in order to assert third-party standing "there must exist some hindrance to the third party's ability to protect his or her own interest" (internal quotations and citations omitted)). Here, however, there is no allegation that the customer is incapable of asserting his or her own rights, and therefore we lack jurisdiction over this claim.

-16-

Moreover, to the extent that the complaint may be read to allege an interference with Mr. Freeman's property interest in a display license granted him by his customer, the claim does not fare any better. The complaint's failure to do more than conclusorily state that the Freemans were both similarly situated to and treated differently from unspecified "other contractors" is insufficient to survive the defendants' motion to dismiss.

### 3. Substantive Due Process

The Freemans claim that the conduct of Town officials and DEP employee Bellino were so outrageous as to constitute substantive due process violations. Substantive due process is said to "protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006). Such claims are limited to government action that, by its very nature, "shock[s] the conscience," id., and we reserve it for "truly horrendous situations." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 46 (1st Cir. 1992). Evidence that officials "exceed[ed] [their] authority under the relevant statutes" does not automatically trigger the due process clause. Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990). In this case, neither the complaint as a whole nor any of its allegations meet the burden of establishing a substantive due process violation.

<u>a. Conservation Commission Defendants</u>

Upon review, nothing in the actions of Byrne, Craig and Esteves reaches the level of conscience-shocking behavior. The Commission retained jurisdiction over Parcel B at all relevant times and had the power to remedy environmental violations at 7 Freeman Circle. The Freemans disagree with the legal conclusions of the Commission and believe that the Commission reached these erroneous conclusions in bad faith. Even if this is true, "[s]uch a claim is too typical of a run of the mill dispute between a developer and a town planning agency, regardless . . . of defendants' alleged mental states, to rise to the level of a due process violation." <u>Creative Env'ts, Inc.</u> v. <u>Estabrook</u>, 680 F.2d 822, 833 (1st Cir. 1982). Our prior cases are replete with plaintiffs who, alleging comparable conduct, failed to sustain substantive due process claims. <u>See</u>, <u>e.g.</u>, <u>Mongeau</u> v. <u>City of Marlborough</u>, 492 F.3d 14 (1st Cir. 2007) (where a town official interfered in the zoning process for improper reasons); <u>Licari</u> v. <u>Ferruzzi</u>, 22 F.3d 344 (1st Cir. 1994) (where a town revoked building permits due to alleged hostility and animus); <u>PFZ Props., Inc.</u> v. <u>Rodriguez</u>, 928 F.2d 28 (1st Cir. 1991) (where a planning board refused to process construction drawings), <u>rev'd on other grounds en banc</u>, <u>San Geronimo Caribe Project, Inc.</u> v. <u>Acevedo-Vila</u>, 687 F.3d 465 (1st Cir. 2012). As in those cases, here the

Freemans' grievances do not support a substantive due process claim.

### b. Commonwealth of Massachusetts Defendant Bellino

The Freemans contend that Bellino, a DEP employee, exercised the muscle behind the Commission's scheme; the threat of DEP enforcement "sledgehammer[ed]" the Freemans into compliance. But DEP is statutorily authorized to enforce applicable laws, see M.G.L. c. 131, § 40, and the Freemans appealed the June 2010 Order of Conditions to DEP, thereby ensuring its involvement. While DEP's participation might have influenced the Freemans, that does not render such participation improper. Moreover, Bellino's conduct throughout this process was not "so shocking or violative of universal standards of decency" as to give rise to a due process violation. Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979)). His communications to Town officials did evince a certain hostility toward the Freemans. The plaintiffs have not shown, however, that Bellino's third-party communications affected their constitutional rights. While these communications may have been in bad taste, they do not constitute violations of the Freemans' substantive due process rights.

### c. Police Department Defendants

Finally, Mr. Freeman claims that the Police Department defendants violated his substantive due process rights by pushing unsupported criminal charges against him for personal reasons.

-19-

Sifting through the many aspersions contained in the complaint, however, reveals only "a garden-variety claim of malicious prosecution." Roche v. John Hancock Mut. Life Ins. Co, 81 F.3d 249, 256 (1st Cir. 1996). "'[S]ubstantive due process may not furnish the constitutional peg on which to hang' [a malicious prosecution tort]." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (quoting Albright v. Oliver, 510 U.S. 266, 271 n. 4, (1994)). While the complaint may be read to allege a plot on the part of Police Department officials and MacPhee to bring charges against Mr. Freeman, it also acknowledges that these charges were predicated on prior incidents between MacPhee and Mr. Freeman. Thus, while the Police Department defendants may or may not have acted with malice, they did not act in the absence of any evidence. Furthermore, none of the Police Department's subsequent actions -- failing to investigate further, obtaining an ex parte probable cause hearing, and discussing the case with the prosecutor -- shock the conscience. If, as alleged, improper personal motivations caused the investigation to follow a certain course, that fact may form the basis for a claim of malicious prosecution, but not a due process violation.[8]

---

[8] The parties' briefs suggest that a malicious prosecution claim against the Police Department defendants is pending in state court.

-20-

### III. Conclusion

For the foregoing reasons, the district court's judgment dismissing the Freemans' section 1983 claims is **<u>affirmed</u>**.